UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LETICIA RUDOLPH,

    Plaintiff,

v.

DANIEL T. BABINEC, *et al.*,

    Defendants.

_____/

Case No. 1:17-cv-125

HON. JANET T. NEFF

**OPINION AND ORDER**

This case is before the Court on Defendants' Motion for Summary Judgment (ECF No. 52). Having considered the parties' submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court grants in part and denies in part Defendants' motion.

    **I.**    **BACKGROUND**

    **A.**    **Factual Background**

This case arises out of an incident that occurred on Saturday, March 15, 2015. Plaintiff alleges that on that date, she had a "dispute" with her ex-husband, Kyle Rudolph, who took her registered weapon—a .22 caliber pistol—from her home when he left (Compl. [ECF No. 1] ¶ 9). At approximately 2:55 a.m., Fruitport Township Police Officer James Hodges performed a traffic stop of Kyle (Statement of Material Facts [SMF] ¶ 1).[1] When Officer Hodges asked Kyle from

---

[1] Counsel wholly failed to comply with the Court's requirement to jointly file a statement of the material facts in this case that are "not in dispute." *See* Judge Neff's Information and Guidelines for Civil Practice at § IV(A)(2). Rather, Defendants filed a "Statement of Material Facts in Support

where he was coming, Kyle indicated that he was coming from Plaintiff's house (*id.*). When Officer Hodges asked Kyle to step out of the vehicle, Kyle stated, "I have a gun" and removed the pistol from his left pants pocket (*id.* ¶ 2). Officer Hodges took the pistol from Kyle and secured the weapon (*id.*). Officer Daniel Babinec then pulled up to assist on the traffic stop and took control of the weapon (*id.*). Kyle told Officer Hodges that he took the weapon from Plaintiff because he believed she was suicidal (Compl. ¶ 10).

Specifically, Officer Hodges indicated in his Incident Report that Kyle told him he received a text from Plaintiff around 1:00 a.m. stating "good bye," and a text from their son stating "she has the .22 out will you go over there" (Defs.' Ex. 3, ECF No. 53-3 at PageID.182). Officer Hodges indicated that he inspected Kyle's phone and confirmed the receipt of the texts (*id.*). Officer Hodges indicated that Officer Babinec obtained Plaintiff's address and requested Officer Robert Atkinson respond to the address to "check well being" (*id.*).

Officer Babinec testified that when he and Officer Atkinson arrived at Plaintiff's home, they knocked on the doors and window, but there was no answer (Defs.' Ex. 4, Babinec Dep. at 31, 45, ECF No.53-5 at PageID.284). Officer Babinec testified that he contacted Officer Hodges, who went to Kyle's home so that Kyle could call Plaintiff and convince her to answer the door (*id.* at PageID.302). Babinec testified that Plaintiff subsequently opened the door to her home and the officers entered (*id.* at PageID.305-306).

Plaintiff alleges that she was "awoken by Defendants and denied to Defendant Babinec that she was suicidal" (Compl. ¶ 12). Plaintiff alleges that she also "insisted [she] did not need evaluation" (*id.* ¶ 13).

---

of Summary Judgment" (ECF No. 53), which, not surprisingly, was denied by Plaintiff nearly in total (ECF No. 55).

According to Officer Babinec's report, Plaintiff "presented as extremely intoxicated due to the odor of intoxicants and her slurred speech" (Defs.' Ex. G, ECF No. 55-8 at PageID.962). He reported that Plaintiff "denied being suicidal" (*id.* at PageID.963). After conferring with Officer Hodges, Officer Babinec requested that Plaintiff "complete a voluntary evaluation of her mental wellbeing at Hackley [Hospital]" (*id.*). Officer Babinec reported that when Plaintiff refused, he explained that she "would be taken to Hackley under involuntary circumstances" (*id.*). He further reported giving Plaintiff "multiple opportunities and encouragement to follow directions to get shoes and follow officers out to my patrol vehicle, which she refused to comply" (*id.*). He reported the following exchange:

> With several refusals to get shoes on and comply with my request, Officer Atkinson and I physically took Leticia into custody by handcuffing her behind her back. It required officers to physically move Leticia to a wall and forcefully place her hand behind her back. No strikes or other control tactics were used although Leticia gave active resistance by pulling away from officers and pulling her hands apart to prevent handcuffing.
>
> Leticia was then taken to my patrol vehicle. She then started to complain that she now agreed to comply with my request and that I needed to allow her go get shoes on. Shoes were gathered after securing her in my patrol vehicle.
>
> I then transported Leticia to Hackley Hospital for a mental evaluation, starting and ending mileage called out.

(*id.*).

Officer Atkinson reported that when Officer Babinec began to take Plaintiff into custody, she "pulled away" from Babinec (Defs.' Ex. G, ECF No. 55-8 at PageID.965). Officer Atkinson reported that he "grabbed ahold of Leticia's left arm and placed it behind her back," and Officer Babinec handcuffed her (*id.*). Officer Atkinson further reported that he "checked the handcuffs which were then double-locked and checked for tightness" (*id.*).

According to Plaintiff, "Defendants Babinec and Atkinson then physically took Plaintiff into custody, handcuffing her behind her back, throwing her against a wall while doing so" (Compl.

3

¶ 13). While Officer Babinec testified that only Plaintiff's "chest area" hit the wall (Defs.' Ex. 4, Babinec Dep. at 21, ECF No. 53-5 at PageID.274), Plaintiff testified that her "face got pushed into the wall" (Defs.' Ex. 5, Pl. Dep. at 42, ECF No. 53-6 at PageID.392).

Plaintiff alleges that as she was being handcuffed, "she complained the cuffs were too tight and continued to complain they were too tight until released at the hospital" (Compl. ¶ 15; Defs.' Ex. 5, Pl. Dep. at 46, ECF No. 53-6 at PageID.397). She further alleges that "Defendants' [sic] refused to allow her to get shoes on" (Compl. ¶ 16). Last, she alleges that "[a]s Defendants removed Plaintiff from her home, Plaintiff requested Defendants to slow down to let her get her footing as they dragged her, which eventually led to Plaintiff injuring her right ankle" (*id.* ¶ 17). Plaintiff testified that she was "pulled" off the porch and "that's where I tried to gather my balance and fell, and I went onto my ankle" (Defs.' Ex. 5, Pl. Dep. at 49-50, ECF No. 53-6 at PageID.400-401). She testified that she was "manhandled out of my house to the end of my driveway" (*id.* at PageID.398).

The initial intake form at the hospital was entered at 3:41 a.m. (Defs.' Ex. 7 at 146, ECF No. 53-8 at PageID.523). The progress note indicates that Plaintiff's blood alcohol level (BAL) was .153 at 4:06 a.m. and, "since patient was still under influence of alcohol, next shift social worker to assess" (*id.*). At 6:50 a.m., her "blood alcohol was 0.08 on a breathalyzer," her risk of self-harm was determined to be "extremely low," and she was released (*id.* at PageID.519).

Plaintiff testified that the next day—a Sunday, she took pictures of her arms and wrists because she wanted "proof" of her "injuries," the "bruises" and "swelling" (Defs.' Ex. 5, Pl. Dep. at 67-73, 102, ECF No. 53-6 at PageID.418-424, 453). She testified that four days after the incident, she saw her family doctor about her ankle because it was "swollen" and "painful" and she "knew there was something wrong" (*id.* at PageID.429-430). She subsequently underwent an

MRI and two ankle surgeries (*id.* at PageID.440).  On April 6, 2015, Plaintiff filed a Citizen Complaint with the Fruitport Township Police Department about the incident (*id.* at PageID.455-456).  In her Citizen Complaint, Plaintiff described her reason for filing as, in pertinent part, "be[ing] awoken to having two police officers ask I'm suicidal because of what my ex-husband stated" (Pl.'s Ex. E, ECF No. 55-6 at PageID.950).

### B.  Procedural Posture

On February 7, 2017, Plaintiff filed a Complaint against Babinec, Atkinson and the Township of Fruitport, alleging excessive force (Count I) and unreasonable seizure without probable cause (Count II) under the Fourth Amendment pursuant to 42 U.S.C. § 1983; false arrest/false imprisonment (Count III); and "Defendant Township of Fruitport's Constitutional Violations" (Count IV) (ECF No. 1).  In February 2018, the Court issued a briefing schedule on Defendants' proposed dispositive motion (ECF No. 48).  Defendants subsequently filed the instant Motion for Summary Judgment (ECF No. 52), to which Plaintiff filed a response in opposition (ECF No. 54) and Defendants filed a Reply (ECF No. 56).  The motion was fully briefed on April 19, 2018.  A Settlement Conference is currently noticed for next month, and, if necessary, a jury trial in October 2018.

## II.  ANALYSIS

### A.  Motion Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The court must consider the evidence and all reasonable inferences in favor of the nonmoving party.  *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013); *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).  The moving party has the initial burden of showing

5

the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The function of the district court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Resolution Trust Corp. v. Myers*, 9 F.3d 1548 (6th Cir. 1993) (citing *Anderson*, 477 U.S. at 249). "A dispute is genuine if there is evidence 'upon which a reasonable jury could return a verdict in favor of the non-moving party.'" *Smith v. Erie Cty. Sheriff's Dep't*, 603 F. App'x 414, 418 (6th Cir. 2015) (citation omitted). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251-52).

### B. Discussion

1. Officer Atkinson

Defendants argue, as a threshold matter, that Defendant Atkinson is entitled to summary judgment because Plaintiff testified that only one officer—Officer Babinec—arrested her and used any force on her (ECF No. 52 at PageID.150). Defendants emphasize that Plaintiff testified that Officer Atkinson merely held her wrist while Officer Babinec applied the handcuffs (*id.* at PageID.151).

In response, Plaintiff argues that Defendant Atkinson violated her Fourth Amendment rights when he unlawfully seized her and failed to intervene to prevent the unreasonable force Defendant Babinec used against her (ECF No. 54 at PageID.539). Plaintiff emphasizes that both

Defendants Atkinson and Babinec unlawfully entered her home and that Defendant Atkinson assisted Defendant Babinec in handcuffing Plaintiff by grabbing her left wrist and pushing her against the wall (*id.* at PageID.540).

Defendants' argument does not entitle Defendant Atkinson to summary judgment. The Court determines that construing the evidence in the light most favorable to Plaintiff, a reasonable juror could conclude that Defendant Atkinson violated Plaintiff's Fourth Amendment rights. Indeed, Defendant Atkinson himself reported that he was the officer who "grabbed ahold of Leticia's left arm and placed it behind her back," and that he was the officer to check Plaintiff's handcuffs for tightness (Defs.' Ex. G, ECF No. 55-8 at PageID.965). Further, Defendant Atkinson testified that he "helped [Babinec] by holding her against the wall" (Pl.'s Ex. C, Atkinson Dep. at 9, ECF No. 55-4 at PageID.905). Accordingly, the Court declines to grant Defendant Atkinson summary judgment on Plaintiff's claims against him on this basis.

2.   Qualified Immunity

Next, Defendants argue that Officers Atkinson and Babinec are entitled to qualified immunity for Plaintiff's Fourth Amendment claims in Counts I and II under 42 U.S.C. § 1983. Under § 1983, a plaintiff may bring "a cause of action against any person who, under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution and federal law." *Amis v. Twardesky*, 637 F. App'x 859, 860–61 (6th Cir. 2015). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted).

To determine whether a defendant is entitled to qualified immunity at the summary judgment stage, courts are required to engage in a two-pronged inquiry. *Tolan v. Cotton*, ___ U.S.

___; 134 S. Ct. 1861, 1865 (2014).  The first inquiry asks whether the facts, "[t]aken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a [federal right[.]" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  The second prong of the qualified immunity analysis asks whether the right in question was "clearly established" at the time of the violation.  *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  Governmental actors are "shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Id.* (quoting *Hope, supra*).  "[T]he salient question . . . is whether the state of law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional."  *Id.* (quoting *Hope,* 536 U.S. at 741).  The "specificity" of the legal principle is "especially important in the Fourth Amendment context."  *D.C. v. Wesby*, ___U.S. ___; 138 S. Ct. 577, 590 (2018).

Courts have discretion to decide the order in which to evaluate those two prongs.  *Pearson*, 555 U.S. at 236.  However, "under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment."  *Cotton*, 134 S.Ct. at 1866.  "This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  *Id.* (quoting *Anderson*, 477 U.S. at 249).

"When more than one officer is involved, the court must consider each officer's entitlement to qualified immunity separately, [and] the court must segment the incident into its constituent parts and consider the officer's entitlement to qualified immunity at each step along the way." *Smith v. City of Troy*, 874 F.3d 938, 944 (6th Cir. 2017) (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009)).

a. *Excessive Force* (Count I)

In Count I, Plaintiff alleges that Defendants used excessive force by handcuffing her too tightly (Compl. ¶ 15), "throwing her against a wall" while taking her into custody (*id.* ¶ 13), and ignoring her request to "slow down to let her get her footing as they dragged her, which eventually led to Plaintiff injuring her right ankle" (*id.* ¶ 17).

    *i.*    Handcuffing claim

In support of summary judgment on Plaintiff's handcuffing claim, Defendants argue that Plaintiff's evidence fails to establish the required elements of a handcuffing claim where Plaintiff (1) offers no evidence that the officers ignored her alleged complaints, (2) offers nothing other than "her own supposition and testimony to establish that she suffered an injury as a result of the handcuffs," and (3) can cite no case clearly establishing that "waiting 10 minutes to remove the handcuffs during transport to the hospital for observation on a mental health seizure of a potentially suicidal Plaintiff violates the Fourth Amendment" (ECF No. 52 at PageID.155-157).

In response, Plaintiff argues that Defendants are not entitled to qualified immunity where her Fourth Amendment rights were violated as to the unduly tight handcuffs and this right was clearly established at the time of the incident (ECF No. 54 at PageID.550). Plaintiff emphasizes that her claim is supported by not only her deposition testimony that neither officer examined or loosened her handcuffs until she was at the hospital, but also the pictures of her bruised hands and wrists (*id.* at PageID.548-550, citing Pls. Exs. A & I).

Defendants' argument does not entitle them to summary judgment.

The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure. *Morrison*, 583 F.3d at 401. The parties agree that in order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine

9

issue of material fact that: (1) he or she complained that the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing (ECF No. 52 at PageID.155; ECF No. 54 at PageID.547-548). *See Miller v. Sanilac Cty.*, 606 F.3d 240, 252 (6th Cir. 2010) (citation omitted).

The summary judgment record in this case is sufficient to create a genuine issue of material fact that Plaintiff complained that the handcuffs were too tight and that the officers ignored her complaints. As for the injury requirement, the extent of the physical injury suffered by a plaintiff need not be severe in order to sustain the excessive-force claim. *Courtright v. City of Battle Creek*, 839 F.3d 513, 519 (6th Cir. 2016). Although Defendants emphasize that Plaintiff offers nothing other than her subjective pain assessment and her subjective interpretation of uncorroborated photos, the Sixth Circuit in *Morrison* held that "allegations of bruising and wrist marks create a genuine issue of material fact with regard to the injury prong." 583 F.3d at 403. Hence, Plaintiff has also offered sufficient evidence to create a genuine issue of material fact that she suffered "some injury." Therefore, the Court denies Defendants' request for qualified immunity on summary judgment on this ground.

      *ii.*    Throwing claim

Defendants argue that Officer Babinec's use of force, even as alleged by Plaintiff, was objectively reasonable under the totality of the circumstances, which included (1) Plaintiff's intoxication; (2) Plaintiff's failure to answer the door, (3) Plaintiff's denial of suicidal intentions, and (4) Plaintiff moving away from Babinec when he tried to apply the handcuffs (ECF No. 52 at PageID.159-160). Defendants argue that Officer Babinec is also entitled to qualified immunity because "it was not clearly established in March 2015 that his conduct, even as alleged by Plaintiff,

violated the Fourth Amendment in the specific context of a mental health seizure" (*id.* at PageID.160).

In response, Plaintiff argues that Defendants were not justified in using any force against her where she had not committed any crime and did not pose any immediate threat to the safety of Defendants (ECF No. 54 at PageID.551). Plaintiff emphasized that she was not intoxicated and was cooperative with both Defendants, answering all of their questions (*id.*).

Defendants' argument does not entitle them to summary judgment.

When making an arrest, officers have "the right to use some degree of physical coercion or threat thereof to effect it." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The parties agree that the pertinent inquiry is whether the use of force is "reasonable" under the circumstances (ECF No. 52 at PageID.157; ECF No. 54 at PageID.550). Reasonableness is an objective standard that "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Courts consider (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.*

Again, the summary judgment record in this case raises a genuine issue of material fact concerning the level of force Defendants used in seizing Plaintiff. As Plaintiff points out (ECF No. 54 at PageID.551), while Defendant Babinec testified that Plaintiff "pulled her arm away from [him]" (Pl.'s Ex. D, Babinec Dep. at 19, ECF No. 55-5 at PageID.921), Defendant Atkinson testified that Plaintiff was not "pulling away" and was "pretty cooperative" (Pl.'s Ex. C, Atkinson Dep. at 10, 18, ECF No. 55-4 at PageID.905, 907). Tackling an individual who is compliant and not actively resisting could well constitute excessive force. *Zucker v. City of Farmington Hills*,

11

643 F. App'x 555, 569 (6th Cir. 2016) (mental health seizure). Therefore, the Court denies Defendants' request for qualified immunity on summary judgment on this Fourth Amendment excessive-force claim, too.

        *iii.*       Ankle claim

Last, Defendants argue that Officer Babinec is entitled to qualified immunity on Plaintiff's "stumbling claim" because "Plaintiff has failed to establish that simply walking too fast could ever rise to the level of excessive force which would implicate the Fourth Amendment" (ECF No. 52 at PageID.161). Defendants also emphasize that "there is no evidence to suggest that Plaintiff's alleged ankle injury is anything more than Plaintiff simply twisting or rolling her ankle as she drunkenly walked to the police vehicle" (*id.*). Defendants assert that "Plaintiff cannot point to a factually similar case giving fair notice that by walking too fast, Officer Babinec somehow violated the Fourth Amendment" (*id.*).

In response, Plaintiff argues that Defendant Babinec had "absolutely no justifiable reason to yank her off her front porch and continue to drag her to his patrol vehicle especially given the fact that she was handcuffed, compliant, and not resisting in any manner" (ECF No. 54 at PageID.552). Plaintiff argues that Defendant Babinec's actions against her were "clearly more than just having her walk too fast" (*id.* at PageID.553).

Defendants' argument does not entitle them to summary judgment.

Defendants characterize Plaintiff's last excessive-force claim as alleging that Defendant Babinec was "walking too fast," but her specific claim is that Defendant Babinec "pulled" her off the porch, causing her to roll her right ankle, and that Babinec subsequently "pulled" her to his patrol car, which was approximately 40 feet down a dirt road (Pl.'s Ex. A, Pl. Dep. at 47-53, ECF No. 55-2 at PageID.807-808). She said she was "in pain the whole time" and had to "hop" in order

to "keep up with him" (*id.* at PageID.808).  Plaintiff alleged that Defendants ignored her request to "slow down to let her get her footing as they dragged her" (Compl. ¶ 17).  The need for force is not justified when a suspect is handcuffed and not trying to escape or hurt anyone. *Jones v. Garcia*, 345 F. App'x 987, 989 (6th Cir. 2009) (citing *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) (determining the need for any application of force against the handcuffed plaintiff was "nonexistent")).  *See also Morrison*, 583 F.3d at 407 ("'Gratuitous violence' inflicted upon an incapacitated detainee constitutes an excessive use of force, even when the injuries suffered are not substantial.").  Because a reasonable jury could conclude that Defendant Babinec used "objectively unreasonable" force in seizing Plaintiff, Defendants' request for summary judgment on this claim is also denied.  In sum, the evidence is not so one-sided that Defendants must prevail as a matter of law on Plaintiff's excessive force claims.

    b.  *Unreasonable Seizure* (Count II)

Turning to Plaintiff's Fourth Amendment claim in Count II (Unreasonable Seizure), Defendants argue that given the information provided to the officers and Plaintiff's condition at the scene, the officers had at least arguable, if not actual, probable cause to believe that Plaintiff posed a danger to herself or others (ECF No. 52 at PageID.154).  Furthermore, Defendants assert that Plaintiff can point to no published authority in this circuit clearly establishing that the officers' conduct in this particularized set of circumstances somehow violated the Fourth Amendment (*id.*).

In response, Plaintiff argues that looking at the facts of this case in the light most favorable to her, one can "only conclude that Defendants lacked probable cause to believe she was a danger to herself or others and such seizure violated her Fourth Amendment right to be free from unreasonable seizures by government officials in which said [r]ight was clearly established at the

time" (ECF No. 54 at PageID.546).  Specifically, Plaintiff points out that she denied being suicidal and that she had no weapon at the time that she was seized (*id.* at PageID.544).  Plaintiff also points out that she was cooperative and answered all of Defendants' questions (*id.*).  Plaintiff emphasizes that she was asleep when Defendants arrived at her home around 3:24 a.m. (*id.* at PageID.783).

Defendants' argument does not entitle them to summary judgment.

"In the context of a mental health seizure, an officer must have probable cause to believe that the person seized poses a danger to himself or others."  *Ziegler v. Aukerman*, 512 F.3d 777, 783 (6th Cir. 2008) (citing *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997)).  This requires "only a 'probability or substantial chance' of dangerous behavior, not an actual showing of such behavior."  *Id.*  As with all questions of probable cause, this is evaluated from the perspective of a reasonable and objective officer; the officer's actual motives are irrelevant."  *Id.*

The catalyst for the officers' intervention was a report by Plaintiff's ex-husband.  The record indicates that Kyle was stopped for speeding, that he told the officers that he had had four drinks and that he was in possession of Plaintiff's gun, although he did not have a permit for carrying a concealed weapon (Pl.'s Ex. B, Kyle Rudolph Dep. at 32, 38, 47-48, ECF No. 55-3 at PageID.870, 875, 885-886).  The general level of uncertainty surrounding the veracity of his account as well as the disparate testimony about Plaintiff's subsequent interaction with the officers are questions of fact bearing on the probable cause issue, and the function of the district court is not to determine the truth of the matter.  *See Resolution Trust, supra.*  Rather, the facts concerning whether there was probable cause in this case are for a jury to determine at trial, not for the Court on summary judgment.

3.  False Arrest/False Imprisonment (Count III)

In Count III, Plaintiff alleges that "Defendants caused the arrest and/or imprisonment of Plaintiff without any legal justification and/or probable cause" (Compl. ¶ 38).

Defendants argue that the Officers are entitled to summary judgment on Plaintiff's state law false arrest claim in Count III because there was probable cause to seize Plaintiff (ECF No. 51 at PageID.165). Defendants argue that they are also entitled to summary judgment because her claim is barred by governmental immunity where Plaintiff can produce no evidence establishing that Officer Babinec's seizure was motivated by malice and was not in good faith (*id.* at PageID.166).

In response, Plaintiff argues that because Defendants did not have probable cause to seize her, they violated not only her Fourth Amendment rights but also her state law right to be free from an unlawful arrest (ECF No. 54 at PageID.555).

To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause. *Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 362 (Mich. Ct. App. 2003). Given this Court's decision to deny Defendants summary judgment on Count II because of a genuine dispute of material fact, the Court likewise denies Defendants summary judgment on Plaintiff's Count III.

4.  *Monell* (Count IV)

In Count IV, Plaintiff alleges that Defendant Township of Fruitport acted recklessly and/or with deliberate indifference when it "practiced and/or permitted customs, policies, and/or practices that resulted in constitutional violations to Plaintiff" (Compl. ¶ 45). Plaintiff alleged that these customs, policies, and/or practices included but were not limited to the following:

> a. Failing to train and/or supervise its officers so as to prevent violations of citizens' constitutional rights;

    b. Failing to adequately train and/or supervise police officers regarding the proper use of force;

    c. Failing to supervise, review, and/or discipline police officers whom the Township of Fruitport knew or should have known were violating or were prone to violate citizens' constitutional rights, thereby permitting and/or encouraging its police officers to engage in illegal conduct;

    d. Failing to control and/or discipline police officers known to harass, intimidate, and/or abuse citizens;

    e. Failing to train officers concerning the mental health issues of citizens and when it is legal and appropriate to involuntarily seize and hospitalize citizens; and

    f. Having a custom, policy, and/or practice of falsely arresting and/or illegally detaining citizens.

(*id.* ¶ 46).

Defendants argue that Plaintiff's failure to "set forth any facts that there were prior instances of similar misconduct so as to show that the [Township] was on notice that its training and supervision with respect to the use of force … was deficient" is fatal to Plaintiff's claims of inadequate training, supervision, and discipline (ECF No. 52 at PageID.162-164). Defendants also argue that the Township is entitled to summary judgment on Count IV as Plaintiff cannot adduce any evidence to support her claims against the Township for an alleged failure to train, discipline, or supervise its officers (*id.* at PageID.164-165).

Plaintiff argues in response that Defendant Fruitport Township must be held liable for its failure to train and supervise its police officers where "Defendant Fruitport Township does not regularly conduct performance evaluations on its police officers nor does it review or monitor the officers' conduct" (ECF No. 54 at PageID.554-555).

Defendants' argument has merit.

To properly state a *Monell* claim against a municipality under 42 U.S.C. § 1983, a plaintiff must prove that a violation of her constitutional rights resulted from a "custom, policy, or practice"

of the municipality. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978)).  Specifically, the custom or policy must have been the "moving force" behind the constitutional violation. *Gregory v. Shelby Cty., Tenn.*, 220 F.3d 433, 442 (6th Cir. 2000); *Monell*, 436 U.S. at 692.

Plaintiff's allegation of only those facts "routinely throw[n] … into every § 1983 action" does not satisfy the plausibility standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Curney v. City of Highland Park*, No. 11-12083, 2012 WL 1079473, at *3 (E.D. Mich. Mar. 30, 2012).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal, supra.*  Plaintiff has neither pleaded nor demonstrated how the Township's evaluation process was the moving force of the specific constitutional violations alleged in this case.  Thus, the Court agrees that the Township is entitled to the dismissal of her *Monell* claim in Count IV.

### III.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 52) is GRANTED IN PART and DENIED IN PART; specifically, Defendants are entitled to summary judgment of Plaintiff's Count IV (*Monell*), but their motion is otherwise denied because there are genuine issues of material facts.  Barring the parties' ability to settle their dispute, this case will proceed to jury trial.


Dated:  July 9, 2018                                              /s/ Janet T. Neff
                                                                         JANET T. NEFF
                                                                         United States District Judge